**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                              *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ENOCH MCKNIGHT,** | : | **Civil Action No.** |
| **430 S Hanover Street** | : | |
| **Carlisle, PA 17013** | : | |
|        **Plaintiff,** | : | |
| | : | |
|    v. | : | **Complaint and Jury Demand** |
| | : | |
| **BIMBO'S BAKERIES USA, INC.,** | : | |
| **1605 Shearer Drive** | : | |
| **Carlisle, PA 17013** | : | |
| | : | |
| **255 Business Center Drive** | : | |
| **Horsham, PA 19044** | : | |
|        **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Enoch McKnight (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Bimbo's Bakeries USA, Inc. (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Bimbo's Bakeries USA, Inc. is a manufacturer of baked goods

with a location at 1605 Shearer Drive Carlisle, PA 17013 and corporate headquarters at 255 Business Center Drive Horsham, PA 19044.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendants is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under Title VII and PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2022-01373 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated September 13, 2022. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is an African American male.

21. On May 8, 2017, Defendant hired Plaintiff as a Maintenance Technician.

22. Plaintiff was well qualified for his position and performed well.

23. In or around 2019, Hunter Kramer (Caucasian) was hired as a Maintenance Technician.

24. Upon being hired, Mr. Kramer frequently used the word "nigger" and made racially discriminatory jokes and comments to Plaintiff.

25. Joel Smith (Caucasian), Maintenance Technician, witnessed Mr. Kramer make these discriminatory comments.

26. Both Plaintiff and Mr. Smith outwardly opposed Mr. Kramer's racial jokes and comments, but Mr. Kramer did not cease his discriminatory behavior.

27. In or around the end of 2019, Plaintiff complained to Mike Smith (Caucasian), Supervisor, about Mr. Kramer's discriminatory comments and racial slurs.

28. Mr. Smith informed both Plaintiff and Mr. Kramer that they had to respect each other.

29. Upon information and belief, Mr. Smith did not discipline Mr. Kramer beyond this.

30. In addition, Mr. Kramer continued to make racial slurs and racially discriminatory comments.

31. Shortly thereafter, Plaintiff witnessed several employees of Defendant, including Mr. Kramer, using equipment at Defendant to make pieces for AR-15 style rifles.

32. Comments were made about how these employees wish Black Lives Matter protestors would approach their homes so that they could shoot them.

33. Plaintiff was intimidated by this conduct, and it prevented him from further reporting Mr. Kramer's discriminatory conduct.

34. On July 30, 2021, Plaintiff attended a shift meeting led by Joel Swartz (Caucasian), Engineering Manager, regarding a Floater position.

35. Plaintiff inquired about how the position would affect the team's overtime hours.

36. Mr. Swartz became enraged by Plaintiff's question and proceeded to scream at Plaintiff.

37. Further, Mr. Swartz stated that Plaintiff needed to learn how to read.

38. Notably, Mr. Swartz did not treat Caucasian employees in this manner when they asked a question during shift meetings.

39. In fact, Mr. Swartz's behavior was so egregious that Dave Hess (Caucasian), Maintenance Technician, Rocky Campbell (Caucasian), Maintenance Technician, Donald Jumper (Caucasian), Maintenance Technician, and Jeremy Remekis (Caucasian), Maintenance Technician, approached Plaintiff after the meeting and informed him that Mr. Swartz behaved inappropriately and unprofessionally towards him.

40. Later that day, Plaintiff emailed Lori Kelley, Human Resources Representative, and Rebecca Palmer, Regional Human Resources Representative, about Mr. Swartz's conduct and advised that he believed it to be discriminatory.

41. The next day, on July 31, 2021, Plaintiff spoke with Ms. Palmer about his complaint.

42. Ms. Palmer informed Plaintiff that the matter would be addressed by Ms. Kelley.

43. Ms. Kelley proceeded to conduct an alleged investigation into Plaintiff's complaint.

44. However, Plaintiff never received any notifications of the status or finding of this alleged investigation.

45. In or around mid-October 2021, several of Plaintiff's coworkers put a picture of a rat in Mr. Kramer's work box after he got another employee terminated.

46. Plaintiff was not involved whatsoever.

47. However, Defendant wrongly suspended Plaintiff along with the coworkers involved.

48. On October 28, 2021, Plaintiff called Danny LNU, Union Representative, regarding the status of his employment.

49. Danny informed Plaintiff that Defendant had terminated him.

50. Specifically, Danny stated that Defendant had found that Plaintiff was not involved in the rat picture being placed in Mr. Kramer's work box.

51. Instead, however, Defendant found that Plaintiff had borrowed tools from Defendant without asking a supervisor for permission.

52. Importantly, Defendant does not have a policy regarding borrowing tools.

53. In addition, it is common practice for Maintenance Technicians to borrow tools from Defendant with asking permission from a supervisor.

54. Notably, Caucasian Maintenance Technicians including, but not limited to, Mr. Smith, Mr. Jumper, Mr. Hess, Mr. Campbell, Mr. Remekis and Mike Ireland frequently borrowed tools from Defendant without asking permission from a supervisor and were not disciplined or terminated for it.

55. On October 29, 2021, Plaintiff's union filed a grievance regarding Plaintiff's termination.

56. On November 5, 2021, Defendant upheld Plaintiff's termination.

57. It is Plaintiff's position that he was discriminated against due to his race and retaliated against for reporting the aforementioned race discrimination in violation of Title VII and the PHRA.

## COUNT I – RACE DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

58. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

59. Plaintiff is a member of protected classes in that he is African American.

60. Plaintiff was qualified to perform the job for which he was hired.

61. Plaintiff suffered adverse job actions, including, but not limited to termination.

62. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

63. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

64. Defendants discriminated against Plaintiff on the basis of race.

65. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

66. The reasons cited by Defendants for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – RACE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

67. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

68. The foregoing conduct by Defendants constitutes unlawful discrimination against Plaintiff on the basis of his race (African American).

69. As a result of Defendants' unlawful race discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

70. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

71. Plaintiff engaged in protected activity protected by Title VII when he complained about race discrimination.

72. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

73. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

74. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

75. Plaintiff engaged in activity protected by the PHRA when he complained to his supervisor about race discrimination.

76. Thereafter, Defendants took adverse employment actions against Plaintiff, including, but not limited to, termination.

77. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Enoch McKnight, requests that the Court grant him the following relief against Defendants:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendants, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the Title VII and the PHRA.

(j) Order Defendants to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## **JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

## **CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

                                                                              **RESPECTFULLY SUBMITTED,**

                                                                              **KOLLER LAW, LLC**

Date: December 12, 2022        **By:**   */s/ David M. Koller*
                                                            David M. Koller, Esquire
                                                            Jordan D. Santo, Esquire
                                                            2043 Locust Street, Suite 1B
                                                            Philadelphia, PA 19103
                                                            215-545-8917
                                                            davidk@kollerlawfirm.com
                                                            jordans@kollerlawfirm.com

                                                           *Counsel for Plaintiff*